**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF EZEKIEL RIVERA, et al., | Case No. 1:24-cv-00176 JLT CDB |
| Plaintiffs, | ORDER GRANTING MOTION TO DISMISS IN PART WITH LEAVE TO AMEND |
| v. | (Doc. 27) |
| KERN COUNTY SHERIFF'S DEPARTMENT, et al., | |
| Defendants. | |

Soluna Lora's two-year-old son died of fentanyl intoxication while he was in the custody of his father, Raul Rivera. Lora's young daughter was also exposed to fentanyl while she was in her father's care, but she survived. Lora is pursuing claims against Rivera and the County of Kern, the Kern County Sheriff's Department, and two individual Sheriff's Deputies in this action, both in her own capacity and as the representative of her deceased son. Her daughter is pursuing similar claims, represented by a guardian ad litem. They allege the County, the Sheriff's Department, and the two deputies could and should have prevented the young boy's death and his sister's fentanyl exposure. The matter is before the court on the Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). That motion is **GRANTED IN PART** with leave to amend, as explained in this order.

/////

1

## BACKGROUND

Because the pending motion is based on Rule 12(b)(6), the Court assumes for present purposes that the Plaintiffs' allegations are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  According to the operative First Amended Complaint, Lora's two young children were staying temporarily with their father and Eva Hernandez, their grandmother, while Lora was moving into a new home.  (Doc. 22 ¶ 33–34.)  She went to check on them one afternoon.  (*Id.* ¶ 35.)  As she gave Rivera some money for diapers and food, he dropped something that looked to her like a bag of drugs.  (*Id.*)  Alarmed at what she had just seen and worried about the safety of her children, Lora demanded that Rivera bring them out to her.  (*Id.* ¶ 36.)  He refused and retreated inside.  (*Id.*)  When Lora persisted, Hernandez called the police and told them Lora was disturbing the peace.  (*Id.*)

Kern County Sheriff's Deputies responded to the call, including Deputies Swords and Chavez, who are named as defendants in this case.  (*Id.* ¶ 38.)  Lora told them she had just seen Rivera with a bag of drugs.  (*Id.*)  She also told them Rivera was on probation and subject to warrantless searches.  (*Id.*)  Rivera had a long criminal history related to drugs.  (*Id.* ¶ 42).  Lora urged the deputies to search the home and to remove her children.  (*Id.* ¶ 38)  The deputies "dismissed her pleas," refused to search the home, and declined to check on the children.  (*Id.* ¶ 39.)  They told her it was a custody dispute, a family law issue, and to go to family court.  (*Id.*)  Lora reiterated her pleas, but the deputies told her to take it up with Rivera's probation officer.  (*Id.* ¶ 40.)  They became irritated and threatened to arrest her if she did not leave.  (*Id.* ¶ 41.)  So she left.  (*Id.*)  Two days later, county authorities were again called to the home; the two children were suffering from fentanyl intoxication and unresponsive.  (*Id.* ¶¶ 33,43.)  The boy, Ezekiel, could not be revived.  (*Id.* ¶ 43.)  His sister E.Z. survived.  (*Id.*)

The two deputies did not report Lora's allegations to Kern County Child Protective Services or any other county agency under California's Child Abuse and Neglect Reporting Act (CANRA) after they initially spoke with her.  (*See id.* ¶¶ 55–60 (citing Cal. Pen. Code § 11164 et seq.).)  Under CANRA, a law enforcement agency must report to the applicable child welfare agency and to the district attorney's office "every known or suspected instance of child abuse or

neglect reported to it which is alleged to have occurred as a result of the action of a person responsible for the child's welfare." (*Id.* ¶ 57 (quoting Cal. Pen. Code § 11166(k)).) If the deputies had reported Lora's allegations as required, child protective services officers could have intervened in time to prevent the tragedy. (*Id.* ¶ 60.) Lora alleges Kern County has no adequate reporting policies and does not adequately train its Sheriff's Deputies on their reporting obligations under CANRA. (*Id.* ¶ 61.)

In this case, originally filed in early 2024, Lora asserts claims both on her own behalf and as the successor in interest to her deceased son. (Docs. 1, 22.) The complaint also includes claims by the young child who survived and who is represented here by a guardian ad litem. (*Id.*) The defendants are Kern County, its Sheriff's Department, Deputies Swords and Chavez, several law enforcement and medical personnel sued under fictitious "Doe" identities, and Rivera. (*Id.* ¶¶ 13–26.) There are nine claims. The first three are federal constitutional claims against the individual officers under 42 U.S.C. § 1983 and the Fourteenth Amendment. The next three are federal constitutional claims against the County and Sheriff's Department under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The last three are based on California law: negligence, wrongful death, and the Tom Bane Civil Rights Act.

Kern County, the Sheriff's Department, and the two individual deputies move to dismiss the *Monell* claims and the state law claims (claims four through nine); they do not move to dismiss the federal constitutional claims against the individual officers (claims one, two, and three). (Doc. 27.) Plaintiffs oppose the motion, and briefing is complete (Docs. 32, 35.)[1] The

---

[1] Defendants contend Lora cannot pursue survival claims on behalf of her son because she did not comply with the California law governing survival actions. (Doc. 27 at 8–9.) In federal court, "[t]he party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Hayes v. County of San Diego*, 736 F.3d 1223, 1228–29 (9th Cir. 2013) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998)). California law requires the personal representative of a deceased person to execute and file a specific declaration before filing a survival action. *See* Cal. Civ. Proc. Code § 377.32(a). But any noncompliance may be cured. *See, e.g.*, *Alejandre v. County of San Joaquin*, No. 19-233, 2019 WL 2355596, at *2 (E.D. Cal. June 4, 2019); *Frary v. Cty. of Marin*, 81 F. Supp. 3d 811, 846 (N.D. Cal. 2015). Lora filed the required declaration with her opposition brief. Defendants do not contend in reply that her declaration falls short of what the law requires. Nor have they identified any prejudice they have suffered as a result of her delay in filing that declaration. The Court thus declines to dismiss any claims based on section 377.32(a).

Court took the matter under submission without hearing oral arguments.  (Doc. 19.)

**STANDARD OF DECISION**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under this rule, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility inquiry is a "context-specific task that requires [this Court] to draw on its judicial experience and common sense."  *Id.* at 679. The Court must "draw all reasonable inferences in favor of the nonmoving party."  *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).

**DISCUSSION**

**I.    Federal Claims Under *Monell***

A plaintiff can pursue a constitutional claim against a municipal government under *Monell* by alleging that government was itself a "moving force" behind a constitutional violation and that its actions amounted to "deliberate indifference" to the constitutional right in question. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Viable claims generally fall into three categories.  *See Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).  First, a plaintiff can point to the government's "expressly adopted official policy."  *Id.* (quoting *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (per curiam)).  Second, "a public entity may be held liable for a longstanding practice or custom,'" such as a failure to put procedural safeguards in place or to train its employees.  *Id.* (quoting *Thomas*, 763 F.3d at 1170). And third, a local government can be held liable when a person with "final policy-making authority" committed the violation or "ratified a subordinate's unconstitutional decision or action and the basis for it."  *Id.* (quoting *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)).

The complaint here includes claims based on each of these three theories: unconstitutional

4

policies (claim four), failures to train (claim five), and ratification (claim six).  The Plaintiffs do not argue in opposition to the pending motion, however, that all three of these claims are viable.  They do not mention their ratification allegations at all.  And although their complaint includes generic allegations that the Sheriff's Department ratified the individual deputies' actions, it does not offer facts that could support these generic allegations.  (*See* Doc. 22 ¶¶ 112–21.)  Claim six is therefore dismissed with leave to amend.  *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (reversing and remanding to permit an amendment adding "plausible facts" to support a *Monell* claim).

Similarly, although the complaint includes broad allegations about unconstitutional policies, Plaintiffs do not rely on arguments about unconstitutional policies in opposing the pending motion.  They contend instead that the County and Sheriff's Department did not have a policy and should have created one.  (*See* Doc. 32 at 9–10.)  It is true, as Plaintiffs argue, that "a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference" under *Monell*.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006).  But courts analyze claims about this type of inaction as challenges to longstanding customs or practices, i.e., as claims about de facto policies of inaction that amount to deliberate indifference.  *See, e.g.*, *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc) (citing *City of Canton v. Harris*, 489 U.S. 378 389 (1989)).  Claim four is therefore also dismissed with leave to amend.

What remains, then, is Plaintiffs' claim that the County and Sheriff's Department did not adequately train their employees.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to support such a claim.  *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).  Plaintiffs do not allege their case is just one in a pattern of similar violations.  They contend the need for training was so clear and so obvious that the County and Sheriff's Department are liable even if this was the first time their failure to train their employees resulted in a tragedy.  (*See, e.g.*, Doc. 32 at 11–12.)

Obvious consequences can indeed "substitute for the pattern of violations ordinarily necessary to establish municipal culpability."  *Connick*, 563 U.S. at 63.  But that is a "rare"

situation.  *Id.*  "'[T]he unconstitutional consequences of failing to train' must be 'patently obvious' and the violation of a protected right must be a 'highly probable consequence' of the decision not to train."  *Kirkpatrick*, 843 F.3d at 794 (quoting *Connick*, 563 U.S. at 63).  For example, the unconstitutionally arbitrary removal of a newborn infant from her mother's care might be one patently obvious consequence of a county's failure to train social works on when it is appropriate to remove children from their parents' custody without warrants.  *See id.* at 796.  The mistaken extradition of a mentally incapacitated person may be the obvious consequence of a city's failure to train its police officers on the proper identification of those they arrest, especially those who are mentally incapacitated.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001); *see also, e.g.*, *Gibson v. County of Washoe*, 290 F.3d 1175, 1195 (9th Cir. 2002) (training on the medical needs of detainees), *overruled in part by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *Long*, 442 F.3d at 1189 (training on medical needs of inmates).

Plaintiffs are correct to point out that state laws and judicial decisions can play a role in this analysis.  (Doc. 32 at 10–11.)  In *Johnson v. Hawe*, for example, a man was arrested and charged with violations of a state privacy law because he had recorded a local police chief who was on duty in public.  *See* 388 F.3d 676, 679–80 (9th Cir. 2004).  But courts had held that police officers could not rely on that privacy law to prosecute people for recording them while they were performing official duties.  *See id.* at 682–83.  Despite the "many" cases imposing constitutional limits on when and how police officers could rely on the privacy law, there was evidence that the city's police department had simply instructed officers to stay "abreast of recent court decisions," without offering any training.  *Id.* at 686.  Unconstitutional efforts to enforce the state privacy law were one obvious consequence of this failure to train in the Ninth Circuit's assessment.  *See id.*

The Plaintiffs' allegations "state a claim to relief that is plausible on its face" based on a similar theory of liability.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  California law imposes a mandatory duty on local law enforcement agencies to cross-report "every known or suspected instance of child abuse or neglect" if that abuse or neglect "is alleged to have occurred as a result of the action of a person responsible for the child's welfare."  *B.H.*, 62 Cal. 4th at 178 (quoting Cal. Pen. Code § 11166(k)).  The California Supreme Court has said that the

6

"intent and purpose" of this law "is to protect children from abuse and neglect" at the hands of their caregivers by increasing "communication and the sharing of information relating to child abuse and neglect among the agencies responsible for the welfare of children." *Id.* at 174.

It is reasonable to infer that if a local government does not train officers about their mandatory reporting obligations, there will be an obvious consequence: officers will not report allegations of neglect or abuse. A child's death or serious injury at the hands of a neglectful or abusive caregiver may in turn be an obvious consequence of such a failure in reporting. It is therefore plausible to infer that the County's and Sheriff's Department's alleged failures to train their officers about their reporting obligations demonstrates deliberate indifference to the well-being of children, and thus to their own and their parents' constitutional rights. Finally, given the allegations about Lora's pleas to the deputies, Rivera's criminal history, and the absence of any report to county child protective services, it is reasonable to infer that Plaintiffs could show Defendants' actions were a moving force behind the death of Lora's daughter and the serious injuries to her son. For these reasons the Court denies the motion to dismiss claim five.

**II.    State Law Claims**

As summarized above, Plaintiffs also assert claims of negligence and wrongful death, and they allege Defendants violated the Bane Act. The County and Sheriff's Department argue at the threshold that they are immune to these claims.[2] (Doc. 27 at 14–15.) They cite section 818.2 of the state Government Code, which provides that public entities are not "liable for an injury caused by adopting or failing to adopt an enactment or failing to enforce any law"; section 820.2, which provides that public employees are not liable for injuries resulting from their acts or omissions if "the act or omission was the result of the exercise of the discretion vested in him"; and section 815, which provides that public entities are liable only as "provided by statute," i.e., that there is no common law tort liability for public entities. (*Id.* at 8–9.)

The California Supreme Court has held that CANRA and Government Code section 815.6

---

[2] They do not dispute, however, that they may be vicariously liable as a matter of state law. *See, e.g.*, *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013) ("[S]tate law imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune.'" (citation and quotation marks omitted)).

create an "exception to the general rule of public entity liability" in cases like this one. *B.H.*, 62 Cal. 4th at 179. Under section 815.6, if a public entity has a "mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury," then that entity "is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." *Id.* As noted, CANRA imposes a "mandatory duty" to cross-report suspected neglect and abuse. *Id.* at 185. The Legislature meant to impose an obligation on "law enforcement and child welfare agencies" to "immediately communicate to each other information received on alleged child abuse or neglect so that they may in turn coordinate their investigative procedures." *Id.* The County and Sheriff's Department can therefore be liable for any injuries proximately caused by failures to give cross-reports under section 815.6 and CANRA's reporting obligations.

The County and Sheriff's Department argue in addition that they cannot be liable for any failures to arrest Rivera or to conduct a more diligent investigation. (Doc. 27 at 15, 16–17.) Plaintiffs do allege in portions of their complaint that the County and Sheriff's Department did not train deputies about their investigative duties and proper investigative techniques (Doc. 22 at 26–27), and they make related allegations about the officers' failure to exercise "reasonable care," such as their allegation that officers "refuse[d] to arrest a parent who is posing a risk to their child," (*id.* at 30–31). In opposition to Defendants' motion, however, Plaintiffs expressly set these allegations to the side; they focus instead on the deputies' "separate and independent obligation to cross-report Ms. Lora's allegation of child endangerment." (*See* Doc. 32 at 14.) As they contend, the state supreme court has confirmed that CANRA imposes an independent obligation to cross-report suspected abuse that is "separate" from an officer's investigatory and other obligations. *B.H.*, 62 Cal. 4th at 185.

The Court thus construes Plaintiff's opposition as withdrawing any theory of negligence or wrongful death based on investigative failures. For that reason, the court need not decide whether the deputies can be liable for failures to arrest Rivera or to conduct a more diligent investigation. As limited by Plaintiffs' opposition, their state law claims do not depend on the inadequacy of the deputies' investigation. Given these holdings, this Court must conclude at this

8

early stage that the County and Sheriff's Department do not enjoy immunity under Government Code sections 815, 818.2, and 820.2.

Defendants next contend on the merits that "there was no reasonable suspicion as to child endangerment or abuse" and that there was no "direct" link between the deputies' actions and the Plaintiffs' injuries. (Doc. 27 at 16.) They do not flesh out these arguments or refer to authorities beyond the general elements of a wrongful death claim. (*See id.*; *see also* Doc. 35 at 4.) Their motion appears to be based on the theory that two links are missing from the alleged chain of cause and effect. First, they note that more than 48 hours passed between the deputies' encounter with Lora and her son's death, implying some other cause may have intervened or superseded their alleged reporting failures. (*Id.*) Second, Defendants argue there are no allegations about when or whether the children had "access to the narcotics," such that there was no "reasonable suspicion as to child endangerment or abuse." (*Id.*)

The Court must make reasonable inferences in Plaintiffs' favor and view their allegations "in the light most favorable" to their position. *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). As summarized above, Plaintiffs allege Lora told the deputies her young children were in Rivera's care, that she just had seen illegal narcotics on his person, and that he was currently on probation with a criminal history related to drug use. Although the complaint does not allege expressly that Rivera took the suspected narcotics with him back into the house, it implies that he did. There is no suggestion, for example, that he threw them away or hid them somewhere outside the home before he retreated back indoors. About two days later, authorities responded to an emergency call and found the children unresponsive and suffering from fentanyl intoxication. With the benefit of favorable inferences, these allegations make out a plausible claim based on the threat of abuse or neglect. A parent who possesses illegal narcotics may fail to attend to the needs and the safety the young children under his care. Though the presence of their grandmother in the home would, presumably, mitigate this risk, the defense does not suggest this occurred, so the Court presumes they do not believe so. The narcotics themselves could also put the children themselves at risk to exposure, and Plaintiffs allege that is what ultimately occurred.

If the deputies had made a mandatory cross-report to a protective services officer, that officer could plausibly have brought more relevant expertise to bear by taking steps to reduce these risks to the two children.

This is not to deny that a contrary interpretation of Lora's allegations is likewise plausible. It may ultimately be impossible to say why or when the children were exposed to narcotics, whether they had "access" to the narcotics Lora saw, whether 48 hours was too little time for a social worker to intervene effectively, and whether a social worker would have lacked authority to enter Rivera's home in any event. But when, as in this case, "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible," then the "complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A motion to dismiss may be granted "only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* (emphasis in original). Defendants' alternative theory is not so convincing that it renders Plaintiffs' allegations, at this stage, implausible. The Court also declines to dwell on arguments and alternative theories Defendants did not develop in their motion. Doing so would deprive Plaintiffs of an opportunity to respond, and Defendants as the moving parties "bear[] the burden of showing that the plaintiff has failed to state a claim." *T.V. v. Sacramento City Unified Sch. Dist.*, No. 15-00889, 2016 WL 397604, at *3 (E.D. Cal. Feb. 2, 2016).

Defendants make no other arguments for the dismissal of Plaintiffs' negligence and wrongful death claims, so the motion to dismiss those claims is denied. Defendants do advance additional arguments about the complaint's ninth and final claim, which arises under the Bane Act. Defendants argue first that this claim cannot succeed because it cannot be asserted on behalf of a deceased victim. (Doc. 27 at 17–18.) Only one of the alleged victims is deceased, but in any event, California federal district courts have repeatedly held in persuasively reasoned orders that a successor in interest can bring a Bane Act claim on behalf of a deceased victim. *See, e.g.*, *Medrano v. Kern Cnty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1016 (E.D. Cal. 2013) (collecting authority and permitting successor to assert Bane Act claim); *Moore ex rel. Moore v. County of Kern*, No. 05-1115, 2007 WL 2802167, at *6 (E.D. Cal. Sept. 23, 2007) ("Plaintiffs, who sue as

10

the decedent's successors in interest, are merely continuing with the action that arose in the decedent before his death, and are not seeking damages based on their own constitutional rights.").

Defendants also contend that the complaint does not state a claim under the Bane Act. (Doc. 27 at 18–19.)  "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907 (9th Cir. 2024), *cert. denied sub nom. Cueto v. Chinaryan*, 145 S. Ct. 1927 (2025) (quoting *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022)).  As noted, Defendants do not currently dispute whether the complaint states a claim against the individual deputies under § 1983.  They focus on Plaintiffs' allegations of "specific intent" only.  (Doc. 27 at 13.)  Whether an officer had the necessary "specific intent" depends on whether the right at issue was "clearly delineated and plainly applicable under the circumstances" and whether the defendant officer had a "particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Sandoval v. County of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (citations omitted).  It is not necessary for the plaintiff to allege or prove there were threats, intimidation, or coercion independent of the constitutional violation in question.  *Sandoval*, 912 F.3d at 520 (quoting *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)).  Specific intent can "be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right." *Id.* (quoting *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 803 (2017)).

California federal district courts, including those within this District, have held that when a federal constitutional violation depends on allegations and proof of a defendant's "deliberate indifference" to constitutional rights, then a plaintiff can rely on the same allegations and proof to establish the defendant's "reckless disregard" for purposes of the Bane Act.  *See, e.g.*, *D.M. v. City of Merced*, No. 20-00409, 2024 WL 3540333, at *16–17 (E.D. Cal. July 25, 2024); *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018).  The Ninth Circuit has also held that "[i]n most cases, . . . the existence of specific intent for a Bane Act claim is a question that is

11

'properly reserved for the trier of fact.'" *Chinaryan*, 113 F.4th at 907 (quoting *Hughes*, 31 F.4th at 1224).  Defendants have not demonstrated that there was anything vague or novel about the law or the circumstances the two deputies faced, such that the rights in question were not clearly delineated and plainly applicable. *See Sandoval*, 912 F.3d at 520.  Nor do they dispute at the moment whether the individual deputies were deliberately indifferent to Plaintiffs' constitutional rights.  The court therefore denies their motion to dismiss claim nine.

## CONCLUSION

The motion to dismiss (Doc. 27) is **GRANTED IN PART**.  Claims four and six are dismissed with leave to amend, and the motion is otherwise denied.  If Plaintiffs elect to file a second amended complaint, they must do so within thirty days of the date this order is filed.

IT IS SO ORDERED.

Dated:   **January 23, 2026**

UNITED STATES DISTRICT JUDGE

12